UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| PAL BROUHA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> VERMONT WIND, LLC, ) <br> NORTHEAST WIND PARTNERS II, LLC, ) <br> AND FIRST WIND HOLDINGS, LLC, ) <br> ) <br> Defendants. ) | Case No. 5:14-cv-00063 |

**OPINION AND ORDER RE:
DEFENDANTS' MOTION TO DISMISS
(Doc. 11)**

Plaintiff Paul Brouha brings this action against Defendants Vermont Wind, LLC, Northeast Wind Partners II, LLC, and First Wind Holdings, LLC, claiming that Defendants' operation of the Sheffield Wind Project is a private nuisance. Presently before the court is Defendants' motion to dismiss Brouha's complaint for failure to state a claim upon which relief can be granted. Defendants argue that Brouha should be collaterally estopped from litigating his nuisance claim because he participated in and appealed the Vermont Public Service Board proceeding granting the wind project a certificate of public good. For the reasons set forth below, the motion to dismiss is DENIED.

**I.    Factual Background**

Brouha filed a complaint in Vermont Superior Court alleging private nuisance against Defendants. In his brief complaint Brouha alleges that the Sheffield Wind Project ("Project"), which Defendants developed and currently own and operate, creates an unreasonable noise

1

impact.[1]  Specifically, Brouha alleges that the turbines, some of which are visible from his home, create a noise "of such a nature, magnitude and frequency that it unreasonably interferes with Plaintiff's use and enjoyment of his land . . . ." (Doc. 5 ¶ 13.)  The Project is located about 1,100 feet from Brouha's property line "and approximately one mile from Plaintiff's home." (*Id.* ¶ 10.)

Brouha "experiences extreme and frequent stress and irritability, and the inability to enjoy . . . activities such as working outside, gardening, eating outside, walking, hiking," etc., which he was able to enjoy before the Project was constructed.  (*Id.* ¶ 16.)  Brouha has consequently endured "pain and suffering, emotional distress, discomfort and inconvenience, loss of the use and enjoyment of [his] property, and a reduction in value of [his] property."  (*Id.* ¶ 17.)  Brouha requests compensatory damages and an injunction against the operation of the turbines.  (*Id.* at 4.)  Defendants removed the action to federal court pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332.  (Doc. 1.)

The parties in their motion filings assert additional facts related to the history of the Vermont Public Service Board's ("PSB") issuance of a Certificate of Public Good ("CPG"). However, since the complaint neither alleges these facts nor relies on them, *see Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006), they are not detailed here, but are considered in the legal analysis to the extent the parties marshal them for their arguments.

    II.    **Legal Analysis and Conclusions**

    A.  **Standard of Review**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint need not contain "detailed

---

[1] In considering a motion to dismiss, facts alleged in the plaintiff's complaint are accepted as true. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but to survive a motion to dismiss it must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If a plaintiff has failed to "nudge[ ] [his] claims across the line from conceivable to plausible," *Bell Atl. Corp.*, 550 U.S. at 570, they must be dismissed.

### B. Brouha Has Pled Facts Plausibly Stating a Claim of Private Nuisance

The court applies the Vermont law of private nuisance. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). "[P]rivate nuisance does not describe any particular conduct of the defendant, but a type of harm suffered by the plaintiff—impaired enjoyment of rights in land." Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* § 398 (2d ed. 2014). Under Vermont law, a private nuisance is an "interference with the use and enjoyment of another's property [that is] both unreasonable and substantial." *Coty v. Ramsey Assocs., Inc.*, 546 A.2d 196, 201 (Vt. 1988). The standard for a substantial interference is "definite offensiveness, inconvenience or annoyance to the normal person in the community." *Id.* (internal quotation omitted). "Substantial harm is that in excess of the customary interferences a land user suffers in an organized society." *Id.* (internal quotation omitted).

Brouha's complaint, while focusing on the noise produced by the Project, mentions that some of the 420-foot-tall turbines of the "utility-scale electric generation facility" are "visible from Plaintiff's property, including from Plaintiff's home." (Doc. 5 ¶¶ 5-11). The parties' motion filings detail the PSB's consideration of the adverse aesthetic impact the Project would pose. (Docs. 11, 14, 15.) Vermont does not recognize adverse aesthetic impact alone as a basis

3

for a private nuisance claim. *See Coty*, 546 A.2d at 201 (noting that "[a]s a general rule, the unsightliness of a thing, without more, does not render it a nuisance under the law," and declining to reconsider the general rule).

Brouha's complaint focuses much more extensively on the noise's impact on his use and enjoyment of his land. Unlike unsightliness, excessive noise is an appropriate basis for a private nuisance claim. *See Wild v. Brooks*, 862 A.2d 225 (Vt. 2004); *Trickett v. Ochs*, 838 A.2d 66 (Vt. 2003); *Pierce v. Riggs*, 540 A.2d 655 (Vt. 1987). Brouha alleges that the turbines produce a noise that is "excessively loud, and continues unabated for long periods of time during both day and night, including for periods of multiple days at a time." (Doc. 5 ¶ 14.) Brouha further alleges that the noise impact "causes substantial and extreme stress and annoyance to persons of normal sensibilities in the community . . . ." (*Id.* ¶ 15.) Accepted as true, Brouha has alleged facts sufficient to state a claim of relief for nuisance that is plausible on its face.

### C. Brouha Is Not Collaterally Estopped from Litigating His Private Nuisance Claim

#### i. The Parties' Arguments

Defendants argue that Brouha should be collaterally estopped from litigating his nuisance claim "because the issues underlying the claim[] he seeks to litigate have been conclusively determined in prior litigation." (Doc. 11 at 1.) Defendants detail the procedural history of the proceedings through which the Project was granted the CPG, as well as Brouha's involvement in them. In short, they state that Brouha: formed a citizens' group known as Ridge Protectors, Incorporated ("RPI"); caused RPI to intervene in the PSB proceeding "to oppose the Project's main construction and operations permit," the CPG; "unsuccessfully appealed the Board's decision to the Vermont Supreme Court"; unsuccessfully "asked the Board to re-open its proceedings, require new proceedings, or take enforcement actions several times"; "opposed the

4

Vermont Agency of Natural Resources' issuance of the Project's construction-phase stormwater discharge permit"; "served as both an appellant and a witness in an appeal of the permit to the Vermont Environmental Court"; and appealed the Vermont Environmental Court's decision affirming the stormwater discharge permit to the Vermont Supreme Court. (*Id.* at 2 fn.1.) Brouha subsequently withdrew his appeal of the stormwater discharge permit. (*Id.*)

Defendants argue that Brouha already exercised his opportunity to litigate the issue whether the noise produced by the Project would be unreasonable. (Doc. 11.) In brief, Defendants urge that collateral estoppel should bar litigation of Brouha's nuisance claim because "[t]he evidence presented and the arguments that were made by all parties during the pre-CPG hearings were directed at determining appropriate standards for sound and visual aesthetics to ensure that the Project would not offend the average person"—the same evidence and arguments, Defendants contend, "as those that would be made in this case." (Doc. 15 at 4, 5.)

Brouha responds that he should not be collaterally estopped from litigating his nuisance claim against Defendants because the issues the PSB decided, as well as the standard it applied in the CPG proceeding, are different from the issues and legal standard under which private nuisance is determined. (Doc. 14.) Brouha relies on *Trickett v. Ochs*—in which the Vermont Supreme Court concluded that the noise from operating an apple orchard could constitute a private nuisance despite compliance with zoning requirements—for this proposition. Brouha emphasizes that, in considering whether the noise produced by the Project would be undue, the "Board did not consider or in any manner assess, evaluate or adjudicate the *direct and actual* impact of the noise from the operation on Plaintiff's property." (Doc. 14 at 5.) Rather, the PSB considered "the potential and hypothetical impact the Project, as proposed, would have on the surrounding area." (*Id.* at 4.)

5

Essentially, Brouha argues that a wind project that operates within the restrictions imposed by its properly accorded CPG nonetheless constitutes a private nuisance to him. Brouha argues that the inquiry into whether the Project is a nuisance to Brouha's use and enjoyment of his property has never been litigated. Rather, what has been litigated is whether the Project should be accorded a CPG, which proceeding considered noise and adverse aesthetic impact to the community in general, but not to Brouha's use and enjoyment of his own property. For reasons detailed below, this court agrees with Brouha.

### ii. Standard for Collateral Estoppel

"The doctrine of collateral estoppel represents a choice between the competing values of correctness, uniformity, and repose. . . . Our system resolves the conflict among values by holding that an issue determined in one proceeding normally may not be reexamined." *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986). As a threshold matter, there is no procedural bar to using conclusions determined by the PSB to collaterally estop litigation of the same issues in a later action in state or federal court. *See Ohland v. City of Montpelier*, 467 F. Supp. 324, 336 (D. Vt. 1979) ("A federal court must accord a prior judgment of a state court the same conclusive effect that res judicata considerations would have required it to be given within the state."); *Sheehan v. Dep't of Emp't & Training*, 733 A.2d 88, 91 (Vt. 1999) ("It is generally recognized that the doctrines of res judicata and collateral estoppel are applicable to administrative proceedings when an agency is acting in a judicial capacity."); *Citibank N.A. v. City of Burlington*, 2:11-CV-214, 2013 WL 5739757 (D. Vt. Oct. 22, 2013) (quoting 30 V.S.A. § 9) (The PSB "is a quasi-judicial agency with powers of a court of record 'in the determination and adjudication of all matters over which it is given jurisdiction.'"); *see also United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966) ("When an administrative agency is

acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.").

This court applies the State of Vermont's standards of collateral estoppel. *See Ohland*, 467 F. Supp. at 336. Under Vermont law, collateral estoppel, or issue preclusion, is found when the following criteria are met:

> (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.

*Trepanier v. Getting Organized, Inc.*, 583 A.2d 583, 587 (Vt. 1990). "Preclusion applies only to issues necessarily and essentially determined in a prior action." *In re P.J.*, 969 A.2d 133, 137 (Vt. 2009) (internal quotation omitted). Moreover, "[t]he party opposing application of collateral estoppel has the burden of showing that it is appropriate to relitigate an issue." *Id.* at 138.

### iii. Analysis

Brouha concedes the first criterion of collateral estoppel has been met. (Doc. 14 at 3.) The parties disagree as to the remainder of the criteria. As to the second criterion, Defendants maintain that the PSB's decision issuing the Project a CPG is final. (Doc. 11 at 7.) Meanwhile, Brouha argues that he has filed noise complaints with Defendant Vermont Wind (pursuant to the Noise Monitoring Plan set by the PSB) but that neither Vermont Wind nor the PSB have held hearings on the complaints or rendered "a final judgment on the merits of the complaints." (Doc. 14 at 9-10.) Defendants are correct that the PSB's decision issuing the CPG is final. 30 V.S.A. § 9 (The PSB has jurisdiction to "render judgments, make orders and decrees, and enforce the same by any suitable process issuable by courts in [Vermont]."); *id.* § 3 ("A case shall be

deemed completed when the board enters a final order therein even though such order is appealed to the supreme court . . . ."). Brouha's post-CPG noise complaints are furthermore final insofar as they have been handled in compliance with the standards set by the PSB—which it appears they have.

Defendants argue that the third criterion for collateral estoppel has been met because Brouha's "private nuisance claim in this case can be made only by relitigating underlying issues that were previously decided against him . . . ." (Doc. 11 at 3.) Brouha contends that "[t]he evidence and argument necessary to determine the issues in Plaintiff's private nuisance claim are separate and distinct from the evidence and argument considered by the Board when granting the CPG to Defendants . . . ." (Doc. 14 at 4.)

Vermont courts have not decided whether a permit granted pursuant to a quasi-judicial proceeding forecloses a private nuisance action on collateral estoppel grounds. The Vermont Supreme Court has recognized that "even a lawfully permitted project may be a nuisance based on its 'conditions or manner of operation.'" *Roy v. Woodstock Cmty. Trust, Inc.*, 94 A.3d 530, 552 (Vt. 2014) (quoting *Trickett*, 838 A.2d at 103). In *Trickett*, however, "compliance with the zoning ordinance [was] of little consequence to the main nuisance issue—whether defendants generated excessive noise." 838 A.2d at 71. Nor did the zoning board in *Trickett* reach the merits of the plaintiffs' noise complaints, believing it was without jurisdiction to impose a noise restriction on agricultural land uses. *Id.* at 71-72.

Defendants point to *Berlin Convalescent Center, Inc. v. Stoneman*, 615 A.2d 141 (Vt. 1992) as evidence, they contend, that "issues litigated in an enforcement or compliance case do have a preclusive effect in a separate merits case that attempts to litigate the same issue." (Doc. 15 at 8.) In that case, plaintiff nursing homes appealed a Medicaid rate set by the Agency of

8

Human Services' Division of Rate Setting, after the agency had recalculated it pursuant to plaintiffs' successful appeal of the first calculated rate. Plaintiffs also filed a separate enforcement action in which they argued that the new rates did not comply with the Superior Court's decision ordering a recalculation of the rates. *Berlin Convalescent Ctr.*, 615 A.2d at 143. The Vermont Supreme Court affirmed the use of collateral estoppel to preclude plaintiffs from litigating their appeal of the recalculated rates after the Superior Court concluded in the enforcement action that the new rates complied with the merits order. *Id.* at 145-46.

*Berlin Convalescent Center* is of limited precedential value, however, to the current case. There, plaintiffs argued in both actions that the agency did not properly calculate the Medicaid rates. Here, Brouha does not argue that the PSB improperly issued a CPG to the Project (which he has already unsuccessfully appealed). Rather, he makes a new claim that the Project constitutes a private nuisance. Vermont courts have therefore left unresolved the issue of whether a quasi-judicial agency can make a conclusion that can collaterally estop litigation of a later nuisance claim.

As Brouha points out, the Vermont Supreme Court has offered guidance in determining whether two issues are identical for collateral estoppel purposes: "Issues are separate for collateral estoppel purposes if the second action involves application of a different legal standard, even though the factual setting of both suits be the same." *In re Harwood*, 86 A.3d 976, 979 (Vt. 2013) (internal quotation omitted). In determining whether the legal standard under which Brouha's nuisance claim is the same, or essentially the same, as the standard under which the PSB concluded that the noise from the Project would not be undue, it is also appropriate and useful to look to decisions of other courts that have already tackled the issue as potential sources of persuasive authority.

The Supreme Court of Appeals of West Virginia addressed the issue of whether a wind project that had been properly issued a siting certificate by that state's quasi-judicial Public Service Commission was nevertheless still subject to nuisance actions. *Burch v. NedPower Mount Storm, LLC*, 647 S.E.2d 879 (W. Va. 2007). The court found that collateral estoppel did not bar plaintiffs' nuisance claim "because the issues previously decided by the [Public Service Commission] in granting appellees a siting certificate are not identical to the issues in a nuisance claim." *Id.* at 894-95. It emphasized the separate legal inquiry that arises out of the distinct private nuisance cause of action:

> The PSC, in determining the propriety of constructing and operating the wind power facility, was charged with appraising and balancing the interests of the public, the general interests of the state and local economy, and the interests of the applicant. The issue in a nuisance claim, however, is whether an interference with the private use and enjoyment of another's land is unreasonable . . . . The PSC did not specifically decide the issue of whether the social utility of the wind power facility outweighs any interference with the appellants' private use and enjoyment of their properties.

*Id.* at 895. The court also found that the West Virginia Legislature in granting the Public Service Commission jurisdiction to issue siting certificates did not intend to abrogate the circuit court's jurisdiction to hear a private nuisance claim. *Id.* at 889.

Likewise, private nuisance, recognized by Vermont courts, is a cause of action that is separate and distinct from a CPG proceeding before the PSB and any appeals therefrom. As noted above, Brouha has plausibly stated a claim of nuisance. To succeed on the merits, he would need to show that the Project's interference with his use and enjoyment of his land is unreasonable and substantial. *Coty*, 546 A.2d at 201.

The PSB in deciding whether to issue a CPG to the Project analyzed the burdens and benefits of it not with regard to Brouha's land, but with regard to "the general good of the state, in accordance with" its statutory directive. (Doc. 11-2 at 3.) The PSB made its findings

regarding factors like aesthetic impact and noise within the overarching edict to do what is best for the state. The PSB noted that Brouha's group RPI "testified that imposition of standards to ensure that the nearest receptor locations are not exposed to undue noise impacts from the Project is a reasonable precaution," and itself found that such absolute standards would be "appropriate." (*Id.* at 72-73.) But the PSB did not analyze the Project's interference of use and enjoyment with Brouha's abutting land in particular, nor did it find that Brouha conceded that the absolute standards it settled on would be reasonable—in fact, it noted that Brouha objected to them. (*Id.* at 72.)

The PSB's discussion of the Project's aesthetic impact exemplifies the PSB's focus on impact to the community as the counterpoint to the Project's benefits (as opposed to Brouha in particular). In deciding that the Project's adverse aesthetic impact would not be undue, the PSB found that the "average person viewing the Project would not be shocked or offended because the majority of the public viewing areas are at a sufficient distance from the proposed turbines that the turbines would not dominate the view." (*Id.* at 62.) The PSB further mentioned that its "consideration of aesthetics . . . [was] significantly informed by overall societal benefits of the project." (*Id.* at 65) (internal quotation omitted). While not particularly supportive of Brouha's nuisance claim for reasons discussed above, these comments underscore the communal cost-benefit standard by which the PSB measured the Project and issued it a CPG. Meanwhile, Brouha's nuisance claim would require determining, *inter alia*, whether a normal person in the community would find the noise as Brouha experiences it on his land definitely offensive, inconvenient, or annoying. *Coty*, 546 A.2d at 201.

The PSB therefore did not decide the same issues that would be litigated in Brouha's private nuisance claim.[2] Were Brouha attempting to relitigate whether the Project should be accorded a CPG or whether the Project has operated within the standards set in the PSB's decision, Defendants would be correct that collateral estoppel should apply to preclude additional litigation and to enforce repose. However, the issue of whether the Project, operating within the bounds of its properly issued CPG, unreasonably and substantially interferes with Brouha's use and enjoyment of his property is one that has yet to be litigated, and one that precludes granting Defendants' motion to dismiss.[3]

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss Brouha's private nuisance claim is DENIED.

Dated at Rutland, in the District of Vermont, this 23rd day of September, 2014.

Geoffrey W. Crawford, Judge
United States District Court

---

[2] Nor do the applicable state statutes direct an abrogation of jurisdiction to hear private nuisance claims against projects that have been issued a CPG. 30 V.S.A. §§ 2-3, 9-15.

[3] Because the court finds that the third criterion for collateral estoppel is not met, the remaining criteria are not considered.